JUDGE KATHLEEN CARDONE

FILED

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

2023 FEB 10  AM 10: 32

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
                    DEPUTY

| | |
|---|---|
| **ERIK SALAIZ,** | § |
| | § |
| | § |
| **Plaintiff,** | § |
| | § |
| **v.** | § |
| | § |
| | § |
| **PURE SOLUTIONS, INC.** d/b/a **PURE** | § |
| **FACTORS** a Florida Corporation, and **JEFFREY** | § |
| **KORENTUR** | § |
| | § |
| **Defendants.** | § |
| | § |

# EP 23 CV 0058

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1.      The Plaintiff is ERIK SALAIZ ("Plaintiff") a natural person, resident of the Western District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

2.      Defendant PURE SOLUTIONS, INC. d/b/a PURE FACTORS ("Pure Solutions") is a corporation organized and existing under the laws of Florida and can be served via registered agent Natalie Collins at 14100 McCormick Drive, Tampa, Florida 33626.

3.      Defendant JEFFREY KORENTUR ("Korentur") is a natural person, resident of Florida, and is the President of Defendant Pure Solutions and can be served at 6237 NW 23rd Road, Boca Raton, Florida 33434.

4.      Defendants Pure Solutions and Korentur are hereinafter collectively referred to as "Defendants."

### JURISDICTION AND VENUE

5.      Jurisdiction.  This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow*

1

*Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case.

6.     Personal Jurisdiction. This Court has general personal jurisdiction over the Defendants because they have repeatedly authorized their agents to place robocalls on their behalf to Texas residents, and derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff.

7.     Venue.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District.  Residing in the Western District of Texas when he received a substantial if not every single call from Defendants that are the subject matter of this lawsuit.

8.     This Court has venue over the Defendants because the calls at issue were sent by the above-named Defendants to the Plaintiff, a Texas resident.

**THE TELEPHONE CONSUMER PROTECTION ACT**

**OF 1991, 47 U.S.C. § 227**

9.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

10.    The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number

2

assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

11.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

12.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

13.     Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

14.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

15.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

16.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

17.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

3

written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

18.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

19.     The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

20.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

21.     A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal

4

quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

22.     Plaintiff successfully registered his personal cell phone (XXX) XXX-1527 on the National Do-Not-Call Registry on April 6, 2022, which was more than 31 days prior to receiving the alleged text messages.

23.     Plaintiff never asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

24.     Defendant Pure Solutions offers supplement products to Men and Women.

25.     Defendant Pure Solutions is owned and controlled by Defendant Korentur.

26.     As part of their marketing, Defendant Korentur authorizes and approves his representatives to make illegal robocalls with a prerecorded voice message to thousands of consumers *en masse* to solicit Defendant Pure Solutions supplement products.

27.     Plaintiff received at least four (4) robocalls with a prerecorded voice message to his personal cell phone 1527 within a two-day period from Defendant Pure Solutions soliciting their supplement products. ("the calls").

28.     The calls all started with the same prerecorded voice message that stated,

"Hi, this is Kaylee. Are you suffering from pain and can't sleep or just need to relax? I have the answer to learn about this amazing national remedy press one now. I quit a daily Ibuprofen regimen after two weeks with this product limited supply available press one."

29.     The prerecorded voice message does not identify Defendant Pure Solutions.

30.     Plaintiff has never had any relationship with Defendants or has never been a customer of Defendants and never gave them his prior express written consent to receive the calls.

31.     With information and belief Plaintiff has received more robocalls with a prerecorded voice message from Defendant Pure Solutions within the past two years that are unknown to Plaintiff at this time but will be revealed during discovery.

32.     On August 16, 2022, Plaintiff received one of multiple robocalls to his personal cell phone 1527 from Defendant Pure Solutions from phone number (442) 499-0721.

33.     Plaintiff answered and heard a prerecorded voice message "Hi, this is Kaylee. Are you suffering from pain and can't sleep or just need to relax?"

34.     Plaintiff was extremely aggravated and annoyed for continuing to receive the same prerecorded voice message and followed the prompts for the sole purpose of identifying the company responsible for the calls.

35.     Plaintiff was then transferred to a male representative from Defendant Pure Solutions named Patrick.

36.     Patrick did not properly identity the company he was calling on behalf of and just stated he was with "customer service."

37.     Patrick asked if Plaintiff had any pain that they can help Plaintiff with.

38.     Plaintiff advised he did have pain for the sole purpose of identifying the company responsible for the calls.

39.     Patrick went over Defendant Pure Solutions CBD products and stated to Plaintiff, "what CBD is specifically known for is helping with pain, inflammations, stress, and anxiety."

40.     Patrick then solicited Plaintiff for a 1000mg CBD oil product on behalf of Defendant Pure Solutions for $50.

41.     The merchant info appeared on Plaintiff's credit card statement as

"PURESOLUT8008954415TAMPAFL" *See Exhibit A.*

42.     The phone number on the credit card statement 800-895-4415 links to websites owned

and controlled by Defendant Pure Solutions which are https://puresolutionsusa.com and

https://purefactorsusa.com.

43.     Plaintiff received the CBD oil product via USPS with an attached invoice from

Defendant Pure Solutions which revealed and confirmed the company responsible for the calls.

*See Exhibit A.*

44.     Table below displays the calls made to Plaintiff on behalf of Defendant Pure Solutions.

| **Number** | **Date** | **Time** | **Caller ID** | **Notes** |
|------------|----------|----------|---------------|-----------|
| 1. | 08/15/2022 | 9:56 AM | 757-982-8114 | Prerecorded voice message |
| 2. | 08/15/2022 | 10:40 AM | 681-688-5977 | Prerecorded voice message |
| 3. | 08/16/2022 | 11:16 AM | 319-318-9124 | Prerecorded voice message |
| 4. | 08/16/2022 | 11:48 AM | 442-499-0721 | Prerecorded voice message. Transferred to Patrick from Pure Solutions and Purchased CBD oil. |

45.     Defendants employ outrageous, aggressive, and illegal sales techniques that violate

multiple federal laws and state consumer statutes.

7

46.     Defendants do not have a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents.  Plaintiff is a Texas resident.

47.     The https://direct.sos.state.tx.us/telephone/telephonesearch.asp site ("Texas Registration Database") does not contain either Defendants Pure Solutions or Korentur registration.

48.     Defendants Pure Solutions or Korentur do not qualify for an exemption under § 302.053.

49.     The calls constituted "calls" under the TCPA that were not made for emergency purposes.

50.     Each and every call was placed while knowingly ignoring the national do-not-call registry.

51.     Each and every call was placed without training their telemarketers/representatives on the use of any internal do-not-call policy.

52.     Defendants never sent Mr. Salaiz any do-not-call policy.  Plaintiff sent an internal do-not-call policy request to Defendants to info@purefactorsusa.com on November 22, 2022, which is an email listed on their website they own and control https://purefactorsusa.com.

53.     Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

## PERSONAL LIABILITY OF DEFENDANT KORENTUR

54.     Defendant Korentur refuses to take any action to stop or curtail unlawful sales practices and robocalling because these practices benefit Defendant Korentur financially.

> "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable. See *United States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985)

The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motors Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992). The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct....or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

Quoting Texas v. American Blastfax:

The Court finds the above principles applicable to the TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers. As the State persuasive argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct. Congress surely did not intend to permit such a result in passing the TCPA.

To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" and the "central figures" behind the TCPA violations. They were the two persons who controlled all of Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful conduct that violate the TCPA, and/or directly controlled and authorized this conduct. And they did so with their eyes and pocketbooks wide open. After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA. On February 9, 2001, they knew they were. Yet they continued to direct their company to send unsolicited intrastate fax advertisements. This is far

9

more than a simple derivative liability case.  Accordingly, the Court *899 holds
defendants Greg and Michael Horne are jointly and severally liable with Defendant
Blastfax, Inc., for all TCPA damages in this lawsuit."  Texas v. American Blastfax,
Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001)

55.     The Same Court held that corporate officers were also personally liable for DTPA
violations;

> The State contends Greg and Michael Horne are personally liable for any DTPA
> damages because they were solely responsible for the violating conduct.....For the
> same reasons discussed in finding the individual defendants personally liable under
> the TCPA, the Court agrees.  See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37
> (Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for
> corporate officer in DTPA misrepresentation claim, based on general rule that "a
> corporate agent knowingly participating in a tortious of fraudulent act may be held
> individually liable, even though he performed the act as an agent for the
> corporation......Accordingly, the Court finds defendants American Blastfax, Inc.,
> Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages
> for their violations of the DTPA." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d
> 892 (W.D. Tex. 2001).

56.     At all times material to the Complaint, acting alone or in concert with others, Defendant

Korentur has formulated, directed, controlled, had the authority to control, or participated in the

acts and practices of Defendant Pure Solutions including the acts or practices set forth in this

Complaint.

57.     Defendant Korentur is the manager and president of Defendant Pure Solutions and

controls the day-to-day operations of Pure Solutions and directed their employees, agents,

salespersons, and solicitors to make TCPA violating robocalls with a prerecorded voice message

to solicit their supplement products.

58.     Defendant Korentur approved and directed the illegal robocalls to be made for his

financial benefit.

59.     Defendant Korentur is not merely a bystander. He is the mastermind that schemed, planned, directed, initiated, and controlled illegal and fraudulent behavior.

60.     Defendant Korentur is well aware his conduct violated the TCPA and Tex. DPTA and refused to alter their behavior. Defendant Korentur is the sole director of Pure Solutions and the only person with the power to make the unlawful, fraudulent, and unethical behavior stop. Yet, Korentur has taken no steps to stop the behavior because the behavior benefits Korentur financially. Defendant Korentur breaks the law with his eyes and pocketbooks wide open.

61.     Defendant Korentur should be held jointly and severally liable for the TCPA violations because he actually committed the conduct that violated the TCPA, and/or he actively oversaw and directed this conduct.

62.     Defendant Korentur should be held liable because to do otherwise would simply allow him to dissolve Pure Solutions and set up a new corporation and repeat their conduct. This would result in the TCPA being unenforceable.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES

## AS A RESULT OF THE CALLS

63.     Defendants' calls harmed the Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

64.     Defendants' calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

65.     Defendants' calls harmed the Plaintiff by intruding upon Plaintiff's seclusion.

66.     Plaintiff has been harmed, injured, and damages by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and

more frequent charging of his cell phone.

## THE PLAINTIFF'S CELL PHONE IS A RESIDENTIAL NUMBER

67.     The calls were to the Plaintiff's cellular phone 1527 which is the Plaintiff's personal cell
phone that he uses for personal, family, and household use. The Plaintiff maintains no landline
phones at his residence and has not done so for at least 15 years and primarily relies on cellular
phone to communicate with friends and family. The Plaintiff also uses his cell phone for
navigation purposes, sending and receiving emails, timing food when cooking, and sending and
receiving text messages. The Plaintiff further has his cell phone registered in his personal name,
pays the cell phone from his personal accounts, and the phone is not primarily used for any
business purpose.

## THE TEXAS BUSINESS AND COMMERCE CODE § 305.053

68.     The Texas Business and Commerce code has an analogous portion that is related to the
TCPA and was violated in this case.

69.     The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or
subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

## VIOLATIONS OF THE TEXAS BUSINESS AND COMMERCE CODE § 302.101

70.     The actions of the Defendants violated the Texas Business and Commerce Code 302.101
by placing solicitation phone calls to a Texas resident without having a registration certificate
and bond on file with the Texas Secretary of State.

71.     Texas Business and Commerce Code § 302.101 provides a private right of action.  A
violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E,
Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by

Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code §
302.303.

72.     The use or employment by any person of a false, misleading, or deceptive act or practice"
causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

73.     Texas Business and Commerce Code §302.101 states that a person (1) "may not make a
telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas],"
(2) "unless the [person] holds a registration certificate for the business location from which the
telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

74.     Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek
damages of up to $5000 per violation of §302.101.

## CAUSES OF ACTION

### COUNT ONE:

### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated
### Telemarketing Without Prior Express Written Consent
### (Against All Defendants)

75.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the
preceding paragraphs.

76.     Defendants violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), at least four (4) times by
placing non-emergency telemarketing calls to Plaintiff's cellular telephone number using a
prerecorded voice message without prior express written consent.

77.     Plaintiff was statutorily damaged at four (4) times under 47 U.S.C. § 227(b)(3)(B) by the
Defendants by the telephone calls described above, in the amount of $500.00 per call.

78.     Plaintiff was further statutorily damaged because the Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount to $1,500.00 as permitted under U.S.C. § 227(b)(3)(C) for each and every willful and/or knowing violation.

79.     Plaintiff is also entitled to and does seek an injunction prohibiting the Defendants and their representatives from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-emergency telemarketing calls to any cellular telephone number using a prerecorded voice message without prior express written consent.

## COUNT TWO:

### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))

### (Against All Defendants)

80.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

81.     Defendants called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

82.     Plaintiff was statutorily damaged at least four (4) times under 47 U.S.C. § 227(c)(3)(F) by the Defendants by the telemarketing calls described above, in the amount of $500.00 per call.

83. Plaintiff was further statutorily damaged because Defendants willfully and/or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

84. Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT THREE:

### Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)

### (Against All Defendants)

85. Plaintiff incorporates the forgoing allegations as if fully set forth herein.

86. The foregoing acts and omissions of the Defendants constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking the following:

   a. A written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1)[2];

   b. Training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[3]; and,

   c. In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

87. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

88.     Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## COUNT FOUR:

### (Violations of The Texas Business and Commerce Code 305.053)
### (Against All Defendants)

89.     Plaintiff incorporates the foregoing allegations as if set forth herein.

90.     The foregoing acts and omissions of Defendants constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Plaintiff's cellular telephone number without his prior express written consent in violation of 47 U.S.C. § 227 et seq. The Defendant violated 47 U.S.C. § 227(d) and 47 U.S.C. § 227(d)(3) and 47 U.S.C. § 227(e) by using a prerecorded voice message that does not comply with the technical and procedural standards under this subsection.

91.     Plaintiff seeks for himself an award of at least $500.00 in damages for each such violation. **Texas Business and Commerce Code 305.053(b).**

92.     Plaintiff seeks for himself an award of up to $1,500.00 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c).

## COUNT FIVE

### (Violations of Texas Business and Commerce Code 302.101)
### Failure to obtain a Telephone Solicitation Registration Certificate
### (Against All Defendants)

93.     Plaintiff incorporates and realleges, as though fully set forth herein, each of the paragraphs above.

113.   Defendants made at least four (4) solicitation sales calls to Plaintiff without having a valid telephone solicitation as required under Tex. Bus. Com. Code 302.101.

114.   As a result of Defendants violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek damages of up to $5,000 for each violation.  Tex. Bus. and Com. Code 302.302(a).

115.   As a result of Defendants violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the Defendants jointly and severally as follows:

A.     Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.     A declaration that actions complained of herein by Defendants violates the TCPA and Texas state law;

C.     An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.     An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporation and individual for four calls.

E.     An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporation and individual for four calls.

17

F.      An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053 intentional violations jointly and severally against the corporation and individual for four calls.

G.      An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101 intentional violations jointly and severally against the corporation and individual for four calls.

H.      An award to Mr. Salaiz of damages, as allowed by law under the TCPA and Texas state law;

I.      An award to Mr. Salaiz of interest, costs, and attorneys' fees, as allowed by law and equity.

J.      Such further relief as the Court deems necessary, just, and proper.

February 10, 2023,                                    Respectfully submitted,


                                                     Erik Salaiz
                                                     Plaintiff, Pro Se
                                                     319 Valley Fair Way
                                                     El Paso, Texas 79907
                                                     915-929-1527
                                                     Salaiz.ep@gmail.com